UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LEONA M. QUALEY,

           Plaintiff,

    v.

PIERCE COUNTY; EDWARD TROYER;
THOMAS DOLAN,

           Defendant.

Case No. 3:23-cv-05679-TMC

ORDER ON MOTIONS TO STRIKE AND
MOTIONS TO EXCLUDE EXPERT
TESTIMONY

## I.    INTRODUCTION

Moses Portillo was killed by Pierce County Sheriff's Deputy Thomas Dolan in Tacoma, Washington on January 16, 2022. Deputy Dolan observed a vehicle changing lanes without a signal. Deputy Dolan pulled the vehicle over and, upon observing Mr. Portillo in the backseat with an open container of alcohol, requested his identification. Deputy Dolan then noticed ammunition on the floor and realized that Mr. Portillo had a firearm in his lap. Deputy Dolan gave Mr. Portillo various commands, which Dolan felt Portillo ignored. According to Deputy Dolan, as Mr. Portillo turned away from him, he believed Portillo might be reaching for the firearm and shot him several times. Deputy Dolan wore a body camera, which captured the events.

1      Plaintiff Leona Qualey—Mr. Portillo's adoptive mother—brought this lawsuit on July 27,

2  2023 against Defendants Pierce County, Sheriff Edward Troyer, and Deputy Thomas Dolan. The

3  complaint raises claims under 42 U.S.C. § 1983 for violating Mr. Portillo's Fourth Amendment

4  Rights, and Washington state law claims for negligence against all Defendants. The case is set

5  for trial on March 10, 2025, and Defendants' summary judgment motion remains pending.

6      The parties have each moved to strike or exclude the opposing party's expert testimony.

7  Defendants have moved to strike the report of Plaintiff's police practices expert, Russ Hicks.

8  Dkt. 28. Defendants have also moved to exclude Jeremy Bauer, Plaintiff's rebuttal witness for

9  Defendant's video forensics expert, Michael Albin. Dkt. 33. Plaintiff has moved to strike the

10  opinions of Albin, Dkt. 37, and the opinions of Defendants' police practices experts, Chris

11  Nielsen and Steve Papenfuhs. Dkt. 46.

12      For the following reasons, Docket 28 and Docket 46 are DENIED. Dockets 33 and 37 are

13  DENIED in part and GRANTED in part, as laid out below.

14                      **II.      BACKGROUND**

15      On January 16, 2022, Deputy Thomas Dolan shot and killed Moses Portillo during a

16  routine traffic stop. Dkt. 1 at 4. While Deputy Dolan was attempting to obtain identification from

17  the driver of the vehicle, he noticed an open container of alcohol and requested identification

18  from Mr. Portillo as well. *Id.* He then also observed a box of ammunition on the floor of the

19  vehicle. *Id.* He began asking where the gun in the vehicle was, and the situation escalated

20  rapidly. *Id.* at 4–5. Though the subsequent events are disputed, *see* Dkt. 40; Dkt. 54, it is clear

21  that Deputy Dolan began issuing directives to Mr. Portillo. Dkt. 41-1 at 34; Dkt. 41-25 (body

22  camera footage). And Deputy Dolan did not believe that Mr. Portillo was complying with those

23  commands. Dkt. 41-1 at 29, 31–32, 34. Ultimately, Deputy Dolan shot Mr. Portillo several times.

24  Dkt. 41-19 at 2, 6. Mr. Portillo died at the scene. Dkt. 41-20 at 29.

1

2        Plaintiff Leona Qualey, as personal representative of Mr. Portillo's estate and in her

3  individual capacity, brought claims against Defendants Deputy Dolan, Pierce County, and

4  Sheriff Edward Troyer under 42 U.S.C. § 1983 for violating Mr. Portillo's Fourth Amendment

5  Rights, and Washington state law claims for negligence against all Defendants. Dkt. 1 at 6–8.

6  The Court set trial and pretrial dates, including deadlines for discovery motions, Dkt. 13; Dkt.

7  23, and the parties proceeded with discovery.

8        The Court set the deadline for disclosure of expert testimony on June 10, 2024. Dkt. 13 at

9  1. That day, Plaintiff disclosed one expert witness: Russ Hicks, a police practices expert. Dkt 34-

10 3 at 2. Defendants disclosed three experts: (1) Michael W. Albin, a digital forensic analyst;

11 (2) Steven Papenfuhs, a police practices expert; and (3) Chris Nielsen, a police practices expert.

12 Dkt. 34-4 at 2–3.

13       July 10, 2024 was the deadline for rebuttal expert disclosures. Dkt. 13. On that day,

14 Plaintiffs disclosed Jeremy Bauer as a rebuttal expert witness. Dkt. 34-6 at 3. Plaintiffs explained

15 that Bauer would rebut "evidence and testimony presented by defendants' identified expert

16 Michael W. Albin[.]" *Id*. Also on July 10, 2024, Plaintiffs disclosed Bauer's expert report. *See*

17 *generally* Dkt. 34-5.

18       On November 7, 2024, Defendants moved to strike Hicks' testimony. Dkt. 28. Shortly

19 after, they also moved to exclude Bauer's testimony. Dkt. 33. In turn, Plaintiff moved to strike

20 Albin's testimony, Dkt. 33, and both Papenfuhs and Nielsen's testimony, Dkt. 46. The Court has

21 reviewed the briefing. The motions are ripe for the Court's consideration.

### III.    LEGAL STANDARD

22       Federal Rule of Evidence 702 governs the admissibility of expert testimony. Testimony is

23 permitted if it is both relevant and reliable. *Est. of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457,

24 463 (9th Cir. 2014) (en banc) (citing Fed. R. Evid. 702), *overruled on other grounds by United*

1    *States v. Bacon*, 979 F.3d 766 (9th Cir. 2020). Before trial, "[t]he trial court acts as a

2    'gatekeeper' to exclude expert testimony that" does not meet these standards. *Neal-Lomax v. Las*

3    *Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1193, 1201 (D. Nev. 2008) (quoting *Kumho Tire*

4    *Co., Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999)).

5    Expert testimony is relevant if it "will assist the trier of fact to understand the evidence or

6    to determine a fact in issue." *Daubert v. Merrell Dow Pharms., Inc. ("Daubert I")*, 509 U.S.

7    579, 589 (1993) (citing Fed. R. Evid. 702(a)); *see also Daubert v. Merrell Dow Pharmaceuticals*

8    *("Daubert II")*, 43 F.3d 1311, 1315 (9th Cir. 1995) (relevant evidence is that which "logically

9    advances a material aspect of the proposing party's case"), *cert. denied*, 516 U.S. 869 (1995).

10    Expert testimony is reliable if it is "based on sufficient facts or data," "is the product of

11    reliable principles and methods," and "reflects a reliable application of the principles and

12    methods to the facts of the case." Fed. R. Evid. 702(b, c, d). More generally, evidence is reliable

13    "if the knowledge underlying it 'has a reliable basis in the knowledge and experience of [the

14    relevant] discipline.'" *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)

15    (quoting *Kumho Tire*, 526 U.S. at 149). In *Daubert*, the Supreme Court set out several factors

16    that courts may consider in determining reliability:

> (1) whether a scientific theory or technique can be (and has been) tested;
> (2) whether the theory or technique has been subjected to peer review and
> publication; (3) the known or potential rate of error and the existence and
> maintenance of standards controlling the techniques operation; and (4) whether the
> technique is generally accepted.

20    *Neal-Lomax*, 574 F. Supp. 2d at 1201 (citing *Daubert I,* 509 U.S. at 593–94). However, these

21    factors do not constitute a "definitive checklist or test," *see Daubert I*, 509 U.S. at 593, and "[i]n

22    other cases, the relevant reliability concerns may focus upon personal knowledge or experience."

23    *Kumho Tire*, 526 U.S. at 150. Nor do the *Daubert* factors "necessarily apply even in every

24    instance in which the reliability of scientific testimony is challenged." *Id.* at 151. Rather, "[t]he

inquiry under Rule 702 is a 'flexible' one, and the district court has 'the discretionary authority . . . to determine reliability in light of the particular facts and circumstances of the particular case.'" *Youngevity Int'l v. Smith*, No.: 16-CV-704-BTM-JLB, 2019 WL 2918161, at *12 (S.D. Cal. July 5, 2019) (quoting *Kumho Tire*, 526 U.S. at 158); *see also Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) ("[A] trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." (internal quotations omitted)).

"Generally, an inquiry under Rule 702 examines the expert's testimony as a whole." *United States v. W. R. Grace*, 504 F.3d 745, 762 (9th Cir. 2007). The proponents of expert testimony bear the burden of establishing its admissibility over the objections of the opposing party by a preponderance of the evidence. *City of Seattle v. Monsanto Co.*, No. C16-107-RAJ-MLP, 2023 WL 4014294, at *4 (W.D. Wash. June 15, 2023) (citing *Daubert I*, 509 U.S. at 592 n.10). District courts "must keep in mind Rule 702's broad parameters of reliability, relevancy, and assistance to the trier of fact." *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998) (internal quotations omitted).

## IV.    DISCUSSION

### A.    Motions To Strike Video Experts – Docket 33 and Docket 37

Both parties have disclosed forensic video experts. Plaintiff's expert, Jeremy Bauer, is a forensic biomechanist and an "Accredited Traffic Accident Reconstructionist." Dkt. 34-6 at 3. Plaintiff will use Bauer to "rebut[] evidence and testimony presented by defendants' identified expert, Michael W. Albin, and also present[] [an] explanation and evaluation from the bodycam and dashcam video from Deputy Thomas Dolan's encounter with Plaintiff's decedent." *Id.* Plaintiff also expects that Bauer will provide "animated forensic evaluation of alternatives which Deputy Dolan could have engaged in that would have provided additional time, safety and

distance to allow a measured and safe extraction of the passengers . . . and establish the inability of Moses Portillo to have engaged in any type of gun fire." *Id.*

Defendant's expert, Michael Albin, is a digital forensic analyst. Dkt. 38-1 at 2. He similarly explains the video evidence and opines on what it reveals about how Deputy Dolan experienced the encounter. *See generally* Dkt. 38-2.

Both parties have objected to the other's proposed testimony. These objections are addressed below. Both experts will be allowed to testify, but portions of both experts' reports (and any related testimony) will be stricken. While this order is meant to provide the parties guidance to prepare their witnesses for trial, the Court cannot anticipate exactly how the testimony will unfold. The Court will resolve further objections to specific testimony at trial.

### 1.    *Plaintiffs' Late Disclosure of Albin*

Defendants first argue that much of Bauer's testimony must be excluded because Plaintiff disclosed his testimony and report late. Dkt. 33 at 4–6. Rule 26 provides that parties must disclose expert testimony, "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). "The purpose of Rule 26(a)(2)'s expert disclosure requirements is to eliminate surprise and provide the opposing party with enough information regarding the expert's opinions and methodology to prepare efficiently[.]" *PUMA SE v. Brooks Sports, Inc.*, No. 2:23-CV-00116-LK, 2024 WL 2091382, at *2 (W.D. Wash. May 9, 2024) (quoting *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1122 (D. Colo. 2006)). Under Rule 37(c)(1), a party who fails to disclose in the time provided may not use the witness at trial absent a showing that the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1).

An exception exists for rebuttal testimony. If the expert evidence "is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)" it may still be admissible. Fed. R. Civ. P. 26(a)(2)(D)(ii); *see also Clear-*

*View Techs., Inc. v. Rasnick*, No. 13–CV–02744–BLF, 2015 WL 3509384, at *2 (N.D. Cal. June 3, 2015) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 749, 759 (8th Cir. 2006)) ("The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party."). Rebuttal experts are limited "'solely to contradict[ing] or rebut[ting] another expert's evidence' because 'it would result in unfair surprise to spring new theories on the opposing party when it is too late to rebut them.'" *Unknown Party v. Arizona Bd. of Regents*, No. CV-18-01623-PHX-DWL, 2022 WL 4481519, at *15 (D. Ariz. Sept. 27, 2022) (quoting Fed. R. Civ. P. 26(a)(2)(d)(ii)).

Bauer was disclosed after the expert cutoff but within the time for rebuttal disclosures. Thus, Bauer's opinions must be limited to rebutting Albin's testimony. Anything further will be excluded. For example, Defendants allege that Bauer's report comments on the credibility of Deputy Dolan. Dkt. 33 at 6. Such testimony will not be allowed. *See also infra* Section B.1.d. (discussing testimony about credibility).

Defendants also urge that Bauer's opinions about Mr. Portillo's ability to hear Deputy Dolan's commands and his discussion of whether it was feasible for Dolan to retreat be excluded. Dkt. 33 at 7. These rebut nothing in Mr. Albin's report. *See id.* And, as discussed further below, Bauer is not qualified as a police practices expert and cannot testify about the standards for Deputy Dolan's conduct. *Infra* Section A.3. All such opinions will be excluded. Bauer's testimony must only rebut the admissible testimony of Albin.

### 2. *Narrative Testimony of Videos*

Each party argues that the opposing party's forensic video expert impermissibly provides narrative testimony, giving opinions on what they believe played out in the video. Dkt. 37 at 11; Dkt. 33 at 11. Plaintiff maintains that Albin should not be allowed to "offer narrative testimony about his interpretation of the video evidence, including what events and times are significant."

Dkt. 37 at 11. Defendants in turn argue that Bauer invades the province of the jury by commenting upon the credibility of witnesses and the events. Dkt. 33 at 11–13.

As explained above, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Opinions that "merely tell the jury what result to reach" are inadmissible. Fed. R. Evid. 704 advisory committee's note on proposed rules.

For this reason, courts regularly exclude narrative testimony describing video footage. *A.B. v. Cnty. of San Diego*, No. 18CV1541-MMA-LL, 2020 WL 4430971, at *2 (S.D. Cal. July 31, 2020) ("[N]arration of the video evidence would be unhelpful to the jury and therefore should be excluded as such under" Rule 702). After all, the jurors can watch the footage and draw the necessary factual conclusions themselves. That is their crucial responsibility as the factfinders. *See, e.g.*, *Jones v. City of Los Angeles*, No. 2:20-CV-11147-FWS-SK, 2023 WL 2559230, at *3 (C.D. Cal. Feb. 24, 2023) ("[An expert's] testimony regarding his mere observations drawn from the video evidence would be unhelpful to the jury, because the jurors can watch the videos for themselves and make their own factual determinations. . . . In that sense, [the expert] is not permitted to testify by narrating and/or instructing the jury regarding what actually took place, as a factual matter, during the incidents captured in the videos he edited and reviewed."); *Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010) (holding that district court properly excluded expert testimony of video analyst that he did not think individual was holding a gun because the "opinion would not have assisted the jury but rather would have told it what result to reach."); *Linn v. Jo-Ann Stores, LLC*, No. C23-1035 TSZ, 2024 WL 3226725, at *3 (W.D. Wash. June 28, 2024) (holding that medical expert could not testify about what they observed in a video because expert lacked knowledge and the jury was qualified to make the same factual determinations); *T.D.P. v. City of Oakland*, No. 3:16-CV-04132-LB, 2019 WL

913840, at *3 n. 34 (N.D. Cal. Feb. 24, 2019) ("Ordinarily, the court would allow expert testimony at trial only about the process to create the video images and would not allow expert testimony about what the images depict because a lay person can see what the images are."); *Zeen v. Cnty. of Sonoma*, No. 17-CV-02056-LB, 2018 WL 3769867, at *2 (N.D. Cal. Aug. 9, 2018) (An expert "may testify about how he enhanced the video footage. He may not testify, however, about what he believes the video footage shows, much less what he believes actually occurred during the incident.").

Thus, both Albin and Bauer will be allowed to testify, but their testimony must be cabined to the area of their expertise. For example, they may explain how they created still frames from the video, Dkt. 38-2 at 127; Dkt. 34-7 at 4–5, the amount of time captured by each frame, Dkt. 38-2 at 127, 130–31; Dkt. 34-7 at 6–7, what portion of the video is depicted, Dkt. 28-2 at 127–28; Dkt. 34-7 at 5, and how they synchronized the time between the body camera and dash camera videos, Dkt 34-7 at 4–5. Neither expert may offer their subjective opinion on what facts the videos "show" or do not show. *See, e.g.*, *Zeen*, 2018 WL 3769867, at *2.

3. *Testimony Will be Limited to Forensic Analysis of the Video*

Finally, both parties argue that the other party's forensic video expert offer testimony beyond the scope of their expertise. Dkt. 33 at 10–11; Dkt. 37 at 8, 9, 13. Defendants argue that Bauer offers opinions on police practices and use of force—opinions he is "unqualified to give." Dkt. 33 at 10. Plaintiff in turn argues several times that Albin oversteps his expertise when he argues about how police officers are trained and how they should react to certain situations. *See, e.g.*, Dkt. 37 at 13.

Both Bauer and Albin's testimony will be limited to forensic analysis of the relevant videos. Neither expert was disclosed as a police practices expert, regardless of any possible qualifications.

Further, both parties already have police practices experts. *See* Dkt. 29; Dkt. 36. Additional testimony would be cumulative under Federal Rule of Evidence 403. "Rule 403 allows the court to exclude relevant evidence 'if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Barabin v. Scapa Dryer Felts, Inc.*, No. C07-1454JLR, 2018 WL 1570781, at *2 (W.D. Wash. Mar. 30, 2018) (quoting Fed. R. Evid. 403); *see also* Fed. R. Civ. P. 16(c)(2)(D) (allowing district courts to "avoid[ ] unnecessary proof and cumulative evidence, and limiting the use of testimony under Federal Rule of Evidence 702").

The Court remains mindful "that the exclusion of evidence under Rule 403 is an extraordinary remedy to be used sparingly," and "the mere presence of overlap does not render testimony unnecessarily cumulative." *Barabin*, 2018 WL 1570781, at *2 (cleaned up*); see also Norman v. Travelers Indem. Co.*, No. 20-CV-01250-LK, 2022 WL 16904797, at *4 (W.D. Wash. Oct. 25, 2022) (relying on *Barabin*). Nevertheless, both parties have disclosed police practices experts. Dkt. 29; Dkt. 36. Defendants, in fact, have disclosed two police practices experts, and should be prepared to address at the pretrial conference how the testimony of each will assist the jury. Dkt. 36. Neither party has proven the admissibility of additional testimony about police practices from Albin or Bauer.

For these reasons, the following portions of Albin's opinion will be excluded:

- Opinion 4's discussion of whether Deputy Dolan had probable cause to stop the vehicle, Dkt. 38-2 at 128;

- Opinion 5's explanation of the difference between an officer's field of vision and a camera's view, though he may testify to the technical limitations of the Axon camera, *id.*;

- Opinion 6 and Opinion 7's discussion of Mr. Portillo's lack of compliance, Deputy Dolan's time to fire his weapon and his time to react, *id.* at 129–30;

- Opinion 8, to the extent that it discusses Portillo's response and whether Deputy Dolan's reaction was "consistent with police officers training," *id.* at 130–31; and

- Opinion 10's mention of Dolan's statement being his "first insight" into his perception, *id.* at 132.

And for the same reasons, these portions of Bauer's rebuttal opinion will be excluded:

- Paragraph 10's interrogation into whether Portillo's hands were empty, Dkt. 34-7 at 5;

- Paragraph 11's characterization of Mr. Portillo's motions, *id.* at 6;

- Paragraph 14's analysis of the feasibility of Deputy Dolan retreating, *id.* at 7; and

- Paragraphs 17–19, which are no longer necessary rebuttal because the relevant portions of Albin's opinion are also excluded, *id.* at 8–10.

Thus, Dockets 33 and 37 are GRANTED in part and DENIED in part.

**B.     Motions To Strike Police Practices Experts – Docket 28 and Docket 46**

Both parties also move to exclude each other's police practices experts. Defendants move to strike Plaintiff's expert, Russ Hicks. Dkt. 28. Mr. Hicks is "a retired, 30-year law enforcement officer and former police academy supervisor and trainer." Dkt. 29-3 at 2. Before retiring, Hicks was the Basic Law Enforcement Academy (BLEA) Assistant Commander and a police instructor (TAC Officer) at the Washington State Criminal Justice Training Commission (WSCJTC) in Burien, Washington. *Id.*

Plaintiff moves to exclude Defendants' experts, Steve Papenfuhs and Chris Nielsen. Dkt. 46. Papenfuhs retired from the San Jose, California Police Department as a sergeant in 2010. Dkt. 36-1 at 42. He had worked as an officer for nearly 30 years. *Id.* He worked as a

supervisor in the Training Division for four years and developed various continuing education programs for officers. *Id.* at 42–43.

Nielsen is a commissioned police sergeant in the State of Washington and has worked in law enforcement for approximately 13 years. Dkt. 36-2 at 1. He presently serves as the Renton Police Department's administrative training sergeant, monitoring "policy developments, contemporary training practices, and emerging trends in law enforcement training" and reviewing "training procedures for compliance with policies, procedures, and best practices." *Id.*

All three witnesses are qualified police practices experts. Nevertheless, both parties have challenged portions of the other experts' reports. Hicks, Nielsen, and Papenfuhs will be allowed to testify, but their testimony will be necessarily limited, as discussed below.

1.   *Docket 28 – Defendants' Motion to Strike Plaintiff's Police Practices Expert Russ Hicks*

a)   *Reliability of Report*

Defendants offer several reasons why they believe the Court should exclude Plaintiffs' expert, Russ Hicks. Dkt. 28 at 7–14. To start, Defendants argue that Hicks' opinions are unreliable because they are based on incorrect facts or data. *Id.* at 8. They point to Hicks' statement that Deputy Dolan knew that Mr. Portillo was "immobilized with a full leg cast, had not made any threats, was compliant, had his hands up, and was only suspected of possibly committing a misdemeanor crime and two infractions." *Id.* Defendants maintain that this misstates the evidence and directly contradicts Deputy Dolan's deposition testimony. *Id.* at 8–9. Thus, they conclude, Hicks "falsely attributed knowledge and beliefs to Dolan and then used that incorrect knowledge and belief to give opinions as to what a reasonable officer would have done under similar circumstances." *Id.* at 9.

Rule 703 allows an expert to "base an opinion on facts or data in the case that the expert has been made aware of or personally observed" as long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. At the same time, Rule 702 requires that expert testimony be "based on sufficient facts or data." Fed. R. Evid. 702. "District courts [thus] have a longstanding responsibility to screen expert testimony, and to prevent unfounded or unreliable opinions from contaminating a jury trial." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1020 (9th Cir. 2022). But the Ninth Circuit has held that "Rule 702's 'sufficient facts or data' element requires foundation, not corroboration." *Id.* at 1025; *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other."). Thus, the inquiry under Rule 702 is "whether an expert had sufficient factual grounds on which to draw conclusions," not whether the expert's "hypothesis is correct" or "corroborated by other evidence on the record." *Id.* at 1025–26 (cleaned up); *see also Hyer v. City & Cnty. of Honolulu*, 118 F.4th 1044, 1056 (9th Cir. 2024) (discussing *Elosu*).

*Hyer v. City and County of Honolulu* is instructive. 118 F.4th at 1056. There, the Ninth Circuit found that the district court erred by excluding expert testimony where the movant had argued for exclusion based on contradicted facts in the record. *Id.* ("Defendants appear to mischaracterize the experts' assumptions as contradicted by the record when they are either corroborated or merely disputed. . . . More importantly, many of these 'false statements' are simply conclusions with which Defendants disagree. Indeed, several of the statements are clearly the opinions the experts formed and that followed naturally from their uncontested expertise.").

But, the Court held, evidentiary opinions based on contradicting facts are not grounds for exclusion. *Id.* at 1058. The Court explained that discerning contested facts is an issue for the jury, not the Court. *Hyer*, 118 F.4th at 1058 (citing *United States v. Finley*, 301 F.3d 1000, 1015–16 (9th Cir. 2002)) ("To be sure, the experts' opinions are contested, and a jury may well reject them."). A district court may conclude that "there is simply too great an analytical gap between the data and the opinion proffered," but "Rule 702 does not license a court to engage in freeform factfinding, to select between competing versions of the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage." *Id.* (quoting *Elosu*, 26 F.4th at 1026). The appropriate venue for "airing out these challenges is cross-examination at trial." *Id.* (quoting *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010)).

The same is true here. The parties have disputed facts in the record. *See generally* Dkt. 40; Dkt. 54. Hicks relies on one version of those disputed facts—such as whether Portillo was compliant, whether his hands were up, and whether Dolan could see his leg cast. *See, e.g.*, Dkt. 29-3 at 45. But this is grounds for thorough cross-examination, not exclusion. *Emblaze Ltd. v. Apple Inc.*, 52 F. Supp. 3d 949, 954 (N.D. Cal. 2014) ("The inquiry into admissibility of expert opinion is a flexible one, where shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.") (cleaned up). The jury should be given the opportunity to determine whether Hicks' analysis rests on solid ground, and thus whether Hicks' opinion is credible. *See Hyer*, 118 F.4th at 1058.

### b)    Admissibility of "Condition Black" Opinion

Next, Defendants argue that Hicks gives impermissible opinions about Dolan's intent and state of mind. Dkt. 28 at 9. Defendants are correct that "[c]ourts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind." Dkt. 28 at 9 (citing *Est. of Casillas v. City of Fresno*, No. 1:16-CV-1042 AWI-SAB, 2019 WL 586747, at *8 (E.D. Cal.

Feb. 13, 2019)). Defendants object to statements made in Hicks' report that they argue assess Deputy Dolan's "intent and mental state" at the time of the shooting. *Id.* They argue that "Hicks lacks the qualifications that would be necessary to testify as to Dolan's psychological state. Hicks has no training in the field of psychology. He should not be allowed to claim that Dolan was in 'Condition Black.'" *Id.*

The Court disagrees. Hicks' testimony does not offer a psychological diagnosis or impermissible testimony about intent or motive. The purpose of Hicks' testimony is to "aid the jury in making its decision by offering [his] opinion that [] Deputy Dolan did not act consistently with national and state police standards, and with the basic police academy training taught to recruits at the WSCJTC regarding the necessity of law enforcement officers maintaining their emotional control and professional composure." Dkt. 29-3 at 41. Hicks explains that the Basic Law Enforcement Academy (BLEA) curriculum teaches officers to maintain their composure and prevent emotional responses that may escalate a situation. *Id.* As a BLEA instructor, he "periodically observed students who lost their composure and were emotionally and cognitively overwhelmed by a situation." *Id.* He found that the affected student-officers were "mentally *stuck*, did not know what to do next, or inappropriately reacted to the situation." *Id.* (emphasis in original). When this occurred, students would "increase the volume of their voice and repeat their commands over and over." *Id.* at 42. He and others at the BLEA referred to this condition as "condition black." *Id.* at 41.

Hicks' report includes slides used in BLEA classes—slides that detail various "color" tiers of emotional responses. *Id.* at 42–44. The slides and descriptions detail a condition, and possible responses, that Hicks taught at BLEA. *Id.* From these training materials, and from his "30-years of experience as an academy instructor, academy official, and a field training officer," Hicks concluded that "Deputy Dolan was emotionally and cognitively overwhelmed by the

situation." *Id.* at 44–45. In his opinion, "it is clear that Deputy Dolan was overcome by fear and was unable to recall his basic training. The video shows that Deputy Dolan clearly lost his composure." *Id.* at 45. Hicks uses the phrase "condition black" to describe this response because that is the terminology used at BLEA to train officers—including Deputy Dolan—to avoid that reaction.

Certainly, this portion of Hicks' opinion speaks to Deputy Dolan's state of mind, which could make it inadmissible. *See Est. of Casillas*, 2019 WL 586747, at *7; *Siring v. Oregon State Bd. Of Higher Educ. Ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013). But courts admit expert testimony related to the effect of extreme stress on an individual. *See, e.g.*, *Detrich v. Ryan*, 677 F.3d 958, 987 (9th Cir. 2012), on reh'g en banc, 740 F.3d 1237 (9th Cir. 2013) ("Abuse impedes the normal development of the brain and likely leads to an underdeveloped cortex and a hyperactive response to stress. Extreme stress interferes with the functioning of the thinking part of the brain that is 'particularly important in inhibiting the stress response.' By establishing another causal link between Detrich's abusive childhood and his crime, this evidence would have increased the mitigating weight of Detrich's horrific childhood. . . . In sum, had Detrich's sentencing counsel . . .  would have been able to present expert analyses showing how both neuropsychological deficits and Detrich's abusive childhood contributed to his crime."); *ADT Sec. Servs., Inc. v. Swenson*, 276 F.R.D. 278, 313 (D. Minn. 2011) (admitting clinical and forensic psychologist testimony about the effects of stress on human reactions); *Poyson v. Schriro*, No. 04-00534-PHX-NVW, 2006 WL 3497782, at *6 (D. Ariz. Dec. 4, 2006) (discussing state court ruling that held "that a defendant's tendency under stress to act more reflexively than reflectively may be relevant to determine whether he acted with premeditation and that expert testimony establishing such tendency should be admissible.").

Similarly, Courts regularly admit opinions from experts discussing an individual's mental illness or mental capacity at the time of an event. *See, e.g.*, *Hyer*, 118 F.4th at 1056 ("Here, the district court erred in excluding expert reports containing relevant opinions offered with sufficient foundation to be admissible. Dr. Daniel's report, for example, opines that 'Hyer was seriously mentally ill.' As a psychiatrist with significant experience in forensic psychology, Dr. Daniel is well qualified to render this opinion based upon his review of the records pertaining to this case.").

Although most of these cases concern psychological testimony, that distinction is not material in the context of Hicks' opinion in this case. Hicks is qualified to offer the opinion at issue. Dkt. 29-3 at 2–5. His report provides extensive background on his role in training officers on emotional control, using the "condition black" framework, at BLEA at the Washington State Criminal Justice Training Commission (WSCJTC) —the very academy Deputy Dolan attended. *Id.* at 2; Dkt. 41-1 at 10–11. As part of his teaching at the WSCJTC, Hicks instructs officers on maintaining professionalism and emotional control. Dkt. 29-3 at 41. Hicks explains,

> The BLEA curriculum provides real life video examples of officers maintaining their professional composure and officers who are emotionally "hijacked" and regrettably escalate situations.
>
> . . .
>
> As instructors we periodically observed students who lost their composure and were emotionally and cognitively overwhelmed by the situation. In these situations, the instructors had to physically intervene for safety reasons because the student failed to act or acted inappropriately to the situation. We found through after-action assessments and interviews, that the affected students were mentally stuck, did not know what to do next, or inappropriately reacted to the situation. These students were in "condition black."
>
> In these situations, it was common to see the student increase the volume of their voice and repeat their commands over and over. Our experience with the overwhelmed students was consistent with the WSCJTC's emotional intelligence training given to police recruits.

*Id.* at 41–42. Hicks then provides slides from various BLEA classes, instructing officers on maintaining emotional control. *Id.* at 43. And Hicks explains color codes used to "assist the students in the comprehension and retention" of officer emotional control safety concepts. *Id.* The color code begins at white (calm and relaxed) and escalates slowly through yellow, orange, red, and then black ("emotionally and cognitively overwhelmed"). *Id.* at 43–44.

Hicks' opinion is limited to his understanding of Condition Black. *Id.* at 41–46. It does not venture any further into psychological analysis that Hicks is unqualified to give. *See id.* Rather, relying on his experience and the training he provides to officers like Deputy Dolan, Hicks analyzes Deputy Dolan's behavior in the footage to assess if he had entered Condition Black. *Id.* at 44–46. For example, Hicks explains,

> In the video, Dolan repeated the same profanity laced commands over and over. Again, we periodically saw this at BLEA when recruits were emotionally overwhelmed in a dynamic training scenario or test, did not know what to do next, or acted inappropriately for the situation.
> . . .
>
> Contrary to basic academy training the video evidence shows there were no attempts to de-escalate the situation.
>
> Based upon basic academy training and the video evidence in this case, Deputy Dolan was in "condition black." Dolan was in the worst position possible (discussed later), did not know what to do next, and was mentally stuck. Deputy Dolan's emotionally charged, and profanity laced commands clearly escalated the situation (and likely himself.)
>
> In conclusion, Deputy Dolan's conduct was not consistent with standardized training and with generally accepted police tactics, and practices.

*Id.* at 46. Hicks' testimony is not rooted in psychological analysis or an improper investigation of Deputy Dolan's state of mind. Rather, his testimony is based on the facts presented, analyzed through the lens of his experience and knowledge as an expert in standards and training for Washington state police officers.

Hicks' testimony thus satisfies *Daubert*. *See Daubert*, 509 U.S. at 595. Before admitting expert testimony, the court must act as a "gatekeeper," determining whether the testimony is both "relevant" and "reliable." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (citing *Daubert*, 509 U.S. at 597). Expert testimony is relevant where "the evidence logically advance[s] a material aspect of the party's case." *Est. of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (cleaned up), *overruled on other grounds by United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020) (en banc). Testimony is reliable where it has "a reliable basis in the knowledge and experience of the relevant discipline." *Id.* (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999)).

This standard recognizes the need for flexibility when evaluating non-scientific testimony. *Friesen v. Ace Doran Hauling & Rigging, Inc.*, No. CV 12-134-M-DLC, 2013 WL 10848144, at *2 (D. Mont. Dec. 9, 2013) ("While several of the *Daubert* factors arguably have not been satisfied here, the Court is satisfied as to the reliability of this expert's opinion and the underlying methodology supporting it, particularly given the relatively nontechnical nature of that opinion."). When the proposed expert testimony "depends heavily on the knowledge and experience of the expert, rather than the methodology or the theory behind it," strictly applying the *Daubert* factors is unnecessary. *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000). After all, "the test of reliability is flexible, and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co.*, 526 U.S. at 141. In such cases, the court must probe the witness's "experience, training, and education" to ensure it provides a "sufficient foundation of reliability" for the expert's testimony. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004) (collecting cases).

Hicks' testimony is also relevant. The Ninth Circuit's Model Civil Jury Instruction for excessive force cases requires the factfinder look to the "totality of the circumstances." *See* 9.25, Particular Rights—Fourth Amendment—Unreasonable Seizure of Person—Excessive Force Cmts. ("'Other factors, in addition to the three *Graham* factors, may be pertinent in deciding whether a use of force was reasonable under the totality of the circumstances.'") (quoting *Nehad v. Browder*, 929 F.3d 1125, 1137 (9th Cir. 2019)); *see also Mattos*, 661 F.3d at 441 ('[W]e examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'") (cleaned up). This includes circumstances such as "any effort made by the officer to temper or to limit the amount of force," "the availability of alternative methods to take the plaintiff into custody," "the parties' relative culpability, i.e., which party created the dangerous situation, and which party was more innocent," and "whether a reasonable officer would have or should have accurately perceived a mistaken fact." Hicks' testimony about Deputy Dolan's conduct and "condition black" may be relevant to the jury when considering any of these circumstances.

Thus, the Court finds that Hicks' testimony about Condition Black is admissible.

        c)     *Report's Legal Conclusions*

Next, Defendants contend that Hicks offers "illegitimate" legal conclusions and opinions on an "ultimate issue of law." Dkt. 28 at 11 (quoting *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017)). Defendants are correct that "[w]hile experts may permissibly opine as to standard law enforcement practices and whether defendants' conduct is in accord with those practices, they may not offer legal conclusions that are solely within the Court's or the fact-finder's province." *Dold v. Snohomish Cnty.*, No. 2:20-CV-00383-JHC, 2023 WL 123335, at *1 (W.D. Wash. Jan. 5, 2023) (quoting *Fontana v. City of Auburn*, No. C13-0245-JCC, 2014 WL 4162528, at *6 (W.D. Wash. Aug. 21, 2014)). "[A]n expert witness cannot give an opinion as to

[their] legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter*, 373 F.3d at 1016. "Such an opinion does not aid the jury in making its decision; it merely attempts to substitute the expert's judgment for that of the jury[ ] or . . . the Court." *Fontana*, 2014 WL 4162528, at *6.

Specifically, "in the excessive force context, courts have held that an expert may not express [their] opinion in terms of whether defendants violated plaintiff's Fourth Amendment rights, used excessive force, or used force that is consistent with a finding of excessive force. Those are impermissible legal conclusions." *Dold*, 2023 WL 123335, at *1 (cleaned up). Courts have recognized in excessive force cases that "[a] fine line separates opinions on ultimate issues which are proper from those which are improper, and here the distinction turns on the helpfulness to the trier of fact in view of the specific circumstances of the case." *Galindo v. Tassio*, No. C13-00105 HRL, 2014 WL 12693525, at *4 (N.D. Cal. June 19, 2014).

To the extent that Hicks' testimony offers legal conclusions, it will not be admitted. Hicks may, however, offer expert testimony about whether Deputy Dolan's actions adhered to generally accepted police practices and the training Dolan received. In his report, Hicks does not characterize Deputy Dolan's actions as reasonable or unreasonable. *See generally* Dkt. 29-3. He discusses police policies that use reasonability as a touchstone. *See, e.g.*, *id.* at 24–28 (discussing Use of Force Policy); *id.* at 11 (discussing Use of Force standards). Hicks never describes the force used as "excessive," nor does he opine on whether Dolan's actions were "unlawful."

Defendants point to Hicks' use of the words "unnecessary" and "appropriate." Dkt. 28 at 11. In *Dold v. Snohomish County*, the court excluded the opinions of a police practices expert where he concluded that a "a reasonable officer" would not have reacted the same as the officer at issue. 2023 WL 123335, at * 2. The court concluded, "[t]hese opinions—and others like them—are inadmissible. In the guise of expert testimony, these opinions seek to do the jury's job

for it." *Id.* (quoting *Diaz*, 876 F.3d at 1197). The court explained that, when such an opinion is given, it is no longer "helpful to the trier of fact." *Id.* at *3 (citing Fed. R. Evid. 704 Adv. Comm. Note). The Court will not allow Hicks to subvert this requirement by simply substituting "necessary" or "appropriate" for "reasonable." "This does not help the jury in determining whether the conduct violated the Constitution; it simply 'tell[s] the jury what result to reach,' which 'does not aid the jury in making a decision.'" *Id.* (quoting *Diaz*, 876 F.3d at 1197).

The Court will allow Hicks to testify but will not allow him to testify "about the deputies' reasonableness, the reasonableness of the force used, . . . or any other opinions of that nature." *Id.* Hicks, like any other police practices expert, must ground his opinions in the relevant law enforcement training and standards without straying into legal conclusions that are reserved for the jury.

### d) Commentary on Witness Credibility

Finally, Defendants argue that Hicks' report should be excluded insofar as he comments upon the credibility of other witnesses. Dkt. 28 at 12–13. They maintain that his report is "littered with impermissible comments upon the credibility of both Dolan and Nasworthy." *Id.* at 13.

"The jury must decide a witness' credibility. . . . Testimony regarding another witness's credibility is inadmissible." *United States v. Betancourt-Betancourt*, 39 F. App'x 483, 485 (9th Cir. 2002) (quoting *United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989)); *see also Reed v. Lieurance*, 863 F.3d 1196, 1209 (9th Cir. 2017) (discussing *Candoli*); *Rapp v. NaphCare Inc.*, No. 3:21-CV-05800-DGE, 2023 WL 5844724, at *3 (W.D. Wash. Sept. 11, 2023) (similar).

The Court will not allow Hicks, or any other expert, to testify about the credibility of other witnesses. But, at this time, Defendants have not provided a basis for the Court to exclude Hicks' opinions on these grounds. While Hicks does note inconsistencies in Deputy Dolan's and

Detective Nasworthy's reports and uses words such as "alleges" or "claims" in discussing their actions, these comments are insufficient to exclude the opinion. Dkt. 28 at 13. Compare Hicks' report to the credibility opinions excluded in *Rapp v. Naphcare*, 2023 WL 5844724, at *3. There, the expert witness specifically discredited the claims of the Defendant by comparing it to the opinions of three other witnesses. *Id.* The expert witness speculated that the Defendant's actions deviated from those of someone with the Defendant's claimed motive. *Id.* And the expert witness "urge[d] her audience to embrace her favored factual narrative[.]"

To the extent that Hicks' testimony crosses the line from analysis to advocacy, the Court will exclude such testimony. The Court will not allow commentary from an expert witness on the credibility of other witnesses. Rather than excluding Hicks and his report, the Court will handle these objections on a question-by-question basis.

### 2.    *Docket 46 – Plaintiff's Motion to Limit Defense Experts' Testimony*

Much of Plaintiff's Motion to Limit Defense Experts' Testimony is similar to Defendants' Motion to Strike Hicks' testimony. Plaintiff first objects to the Defense experts' testimony that Deputy Dolan acted "reasonably" Dkt. 46 at 3–5. Plaintiff maintains that such testimony is "inappropriate." *Id.* at 5.

The Court's analysis here is the same as above. *See supra* Section B.1.c. Nielsen and Papenfuhs may testify but will be subject to the same restrictions as those placed on Hicks. *Id.* They may not testify about Deputy Dolan's "reasonableness, the reasonableness of the force used, . . . or any other opinions of that nature." *Dold*, 2023 WL 123335, at *4. All counsel should prepare their witness examinations to avoid eliciting this testimony.

Second, Plaintiff objects to statements made by Nielsen and Papenfuhs that Plaintiff argues characterize and cherry-pick facts in the record. Dkt. 46 at 5–8. For example, Papenfuhs' report describes Portillo's behavior as "argumentative" and refers to Portillo's "aggressive verbal

communications[.]" *Id.* at 6. Similarly, Plaintiff asks that the Court prevent Nielsen and Papenfuhs from testifying or "opining" that Portillo moved for a gun. *Id.* at 7.

As explained above, *see supra* Section B.1.a., the inquiry under Rule 702 is "whether an expert had sufficient factual grounds on which to draw conclusions," not whether the expert's "hypothesis is correct" or "corroborated by other evidence on the record." *Elosu*, 26 F.4th at 1025–26 (cleaned up). "To the extent that the reports claim to opine on what actually happened the night of Mr. [Portillo's] death, they are insufficient to justify such an opinion[.]" *Dold*, 2023 WL 123335, at *5. But to the extent Nielsen and Papenfuhs describe which version of contested facts they rely on to reach their conclusions or to the extent that they "grapple with the conflicting evidence" here, their opinions may be admissible. *See id.*; *see also Hyer*, 118 F.4th at 1056.

Experts may assume certain facts to be true in forming their opinion, though they must state what version of the facts they used. *Hyer*, 118 F.4th at 1058. Opinions based on contradicting facts are not grounds for exclusion. *Id.* When, as here, "facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis . . . on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes on version of the facts and not the other. . . . By deciding the disputed facts, the jury can decide which side's experts to credit." Fed. R. Evid. 702 advisory committee notes to 2000 amendment.

The appropriate venue for this challenge is at trial. *Daubert*, 509 U.S. at 595 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Plaintiff may challenge Nielsen and Papenfuhs' testimony then, and the Court will consider objections as necessary at that time.

1

## V.    CONCLUSION

2

For the reasons discussed above: Docket 33 and Docket 37 are GRANTED in part and

3

DENIED in part. Docket 28 and Docket 46 are DENIED in full.

4

Dated this 21st day of January, 2025.

5

_____
Tiffany M. Cartwright
United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24