1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8  LEONA M. QUALEY,                        Case No. 3:23-cv-05679-TMC

9                    Plaintiff,            ORDER ON MOTIONS IN LIMINE

10        v.

11  PIERCE COUNTY; EDWARD TROYER;

12  THOMAS DOLAN,

13                    Defendant.

14

15        Before the Court are Plaintiff's and Defendant's motions in limine (Dkt. 73, 74, 75). The

16  Court has considered the parties' briefs. The motions are ripe for the Court's consideration.

17                        **I.    BACKGROUND**

18        Plaintiff Leona M. Qualey brings this civil rights action under 42 U.S.C. § 1983 for

19  alleged excessive force against Defendant Deputy Thomas Dolan.[1] Both parties filed their

20  motions in limine on February 3, 2025. Dkt. 73, 74, 75. Both parties responded to the other's

21  motions. Dkt. 82, 84. Certain motions are stipulated to by the parties while others are disputed.

22  The Court addresses each motion in turn.

23

24
---
[1] Defendants Pierce County and Sheriff Ed Troyer were dismissed from the case on January 27, 2025. Dkt. 67.

1

## II.    DISCUSSION

2

### A.    Legal Standard

3

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence

4

in a particular area." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013)

5

(quoting *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009)).

6

"To exclude evidence on a motion in limine the evidence must be inadmissible on all

7

potential grounds." *Goodman v. Las Vegas Metro. Police Dep't,* 963 F. Supp. 2d 1036, 1047 (D.

8

Nev. 2013), aff'd in part, rev'd in part, dismissed in part, 613 F. App'x 610 (9th Cir. 2015)

9

(internal quotations omitted). "[I]f not, the evidentiary ruling is better deferred until trial, to

10

allow for questions of foundation, relevancy, and prejudice to be resolved with the appropriate

11

context." *Romero v. Washington*, No. 2:20-cv-01027-TL, 2023 WL 6458871, at *1 (W.D. Wash.

12

Oct. 4, 2023) (citation omitted).

13

In ruling on motions in limine, courts do not "resolve factual disputes or weigh

14

evidence." *United States v. Meech*, 487 F. Supp. 3d 946, 952 (D. Mont. 2020) (internal

15

quotations and citation omitted). The inquiry is discretionary. *See United States v. Layton*, 767

16

F.2d 549, 554 (9th Cir. 1985).

17

### B.    Plaintiff's Motions in Limine

18

    *1.    Motion in Limine 1: Exclude discussion of the events before the traffic stop and any interactions with others in the car before the stop.*

19

The parties dispute exactly what occurred before Defendant Dolan stopped Adara

20

Simonian's vehicle. Plaintiff moves to exclude any testimony or evidence about these events,

21

explaining that "[t]here is no evidence that defendant Deputy Dolan knew about [prior events]

22

. . . that would have impacted or affected how he interacted with Moses Portillo and later used

23

deadly force on him." Dkt. 73 at 4. Plaintiff thus argues that "[a]ny probative value of this

24

1  evidence which is completely irrelevant, would be outweighed by the prejudice it would create

2  against Moses Portillo, and could also be considered improper character propensity evidence."

3  *Id.*

4      Defendant Dolan responds that the request is overbroad and points to several facts that he

5  believes are relevant and probative that Portillo had fired one of his guns inside the vehicle

6  earlier that night and that Simonian saw Portillo with two guns. Dkt. 82 at 2–8. Defendant argues

7  that the evidence shows that Portillo possessed two firearms and that the firearms were

8  functional. *Id.* at 2–7.

9      "[W]hen analyzing the objective reasonableness of the officers' conduct under *Graham*,

10  we cannot consider [facts unknown to the officers at the time]." *Hayes v. Cnty. of San Diego*,

11  736 F.3d 1223, 1232–33 (9th Cir. 2013) (citing *Graham v. Connor*, 490 U.S. 386, 396–

12  97(1989)). The Ninth Circuit has held that "unknown, preshooting knowledge . . . is inadmissible

13  to establish the reasonableness of an officer's conduct." *Ruvalcaba v. City of Los Angeles*, 2014

14  WL 4426303, at *1-2 (C.D. Cal. Sept. 8, 2014); *see also Glenn v. Wash. Cnty.*, 673 F.3d 864,

15  873 n. 8 (9th Cir. 2011) ("We cannot consider evidence of which the officers were unaware—the

16  prohibition against evaluating officers' actions 'with the 20/20 vision of hindsight' cuts both

17  ways.")

18      Defendant's theory regarding Portillo's possession of working firearms is based entirely

19  on evidence that was not known to Defendant Dolan at the time. That tenuous theory cannot

20  justify the admission of highly prejudicial evidence that was not known to Defendant Dolan

21  when he decided to use deadly force. The Court finds that the minimal probative value of any

22  evidence that Portillo had working firearms, had previously used one, and knew he should not

23  possess either, is outweighed by a high danger of unfair prejudice and confusion of the issues.

24  Fed. R. Evid. 401, 403. This motion in limine is GRANTED.

ORDER ON MOTIONS IN LIMINE - 3

2.      *Motion in Limine 2: Exclude testimony, evidence, or argument regarding the existence of a "second gun" on the backseat of the car.*

Plaintiff next moves to exclude evidence discovered during the post-shooting investigation that revealed that Portillo possessed a second handgun in the backseat of the vehicle. Dkt. 73 at 4. That Defendant Dolan was unaware of the second handgun on the backseat is undisputed. *Id.* Plaintiff thus maintains that introduction of such evidence would be irrelevant and confusing to the jury. *Id.* at 5.

Defendant "acknowledges that Dolan saw only one of those guns," but still argues that the second gun is relevant because it "directly refutes several claims that plaintiff will make in this case." Dkt. 82 at 8. Specifically, Defendant maintains that Plaintiff's counsel will claim that Defendant Dolan's body camera showed that Portillo was holding an orange vape pen. *Id.* An orange object can be seen in the dashcam footage as well, though it is "quite grainy." *Id.* at 9. Defendant asserts that he should be able to argue that it was not a vape pen in Portillo's hand but "the tan Glock that, when illuminated by red emergency lights, could appear orange." *Id.* Defendant argues that the information is "certainly probative as it directly rebuts an assertion on a material fact that the Plaintiff will make a central theory of the case." *Id.* And Defendant claims that the prejudice is reduced because evidence of Portillo's other firearm will be admitted. *Id.*

Again, here, the touchstone of the analysis is what Defendant Dolan knew when he shot Portillo, and subsequently, whether that information influenced his use of force. According to Defendant Dolan, during the traffic stop, he noticed a box of 9mm ammunition on the floor of the backseat. Dkt. 41-1 at 27. He asked Simonian, "Okay, where's the gun in the car?" Dkt. 32 at 21:59:53. Simonian responded, appearing confused. *Id.* She asked, "The what?" and Dolan responded, "The gun." *Id.* at 21:59:53–55. Dolan, using his flashlight, looked into the backseat and said, "Okay, it's on his lap." *Id.* at 21:59:56–57. Dolan immediately drew his weapon. *Id.* at

21:59:57. Portillo was not holding a gun. Dkt. 41-1 at 29; Dkt. 55-3 at 19. The body camera shows that his right arm was stretched out at shoulder height towards the driver's seat and his left arm was relaxed, his hand out of view. Dkt. 32 at 22:00:00–06. At no point is a second gun visible in the body camera footage. *See generally id.* And Defendant has not offered testimony that Deputy Dolan believed there was a second gun in the vehicle before shooting Portillo.

Thus, the motion is GRANTED.

3.      *Motion in Limine 3: Exclude evidence of Portillo's consumption of alcohol or intoxication at the time of the shooting.*

Plaintiff also urges the Court to exclude evidence about Portillo's prior drug or alcohol use as improper character evidence that could unfairly prejudice the jury. Dkt. 73 at 5. Plaintiff "anticipates that [D]efendants will try to introduce" such testimony "to speculate that there was some sort of motive for Mr. Portillo to assault Officer Dolan." *Id.* But Plaintiff explains that there is no evidence that Defendant Dolan "had a concern that Moses Portillo had been drinking or was intoxicated." *Id.* at 6.

Defendant responds that Portillo's alcohol use on the night of the incident is relevant to "why he chose to reach for a firearm, even though Dolan had a gun pointed at Portillo and was ordering him to raise his hands and to 'not reach for it.'" Dkt. 82 at 9–10. Defendant also argues that the evidence is admissible under Federal Rule of Evidence 404(b) because 1) Simonian will testify that Portillo drank that evening; 2) Portillo had a half-empty bottle of Hennessy on his person; 3) Portillo did something reckless; 4) Portillo's drinking was close to the relevant events; and 5) this evidence makes Plaintiff's argument "less true – Portillo ingested something that is known to lower inhibitions, and then he did something reckless." *Id.* at 10.

The Court disagrees with Defendant's analysis. *See Est. of Diaz v. City of Anaheim*, 840 F.3d 592, 598 (9th Cir. 2016). Again, "we can only consider the circumstances of which [the

officer was] aware when they employed deadly force." *Hayes*, 736 F.3d at 1232–33 (citations omitted). "Accordingly, when analyzing the objective reasonableness of the [officer's] conduct under *Graham*, [the Court] cannot consider the fact that [the decedent] was intoxicated[.]" *Id.* The question thus turns on what Defendant Dolan knew or suspected at the time of the incident. *Diaz*, 840 F.3d at 598 ("In contrast, the court found that the toxicology evidence was not relevant to § 1983 liability, as [the officer] did not know or suspect that [the decedent] was under the influence of drugs at the time of the incident.").

Accordingly, the Court determines that Defendant may only admit evidence or elicit testimony that speaks to what Defendant Dolan knew at the time of the incident. For example, after Simonian produced her driver's license, Defendant Dolan said that he wanted to see Portillo's identification too, "because he's not wearing a seatbelt and he's got an open container." Dkt. 32 at 21:59:23–27. Defendant may speak to what he knew, saw, or suspected. Defendant may not offer evidence or testimony about what he did not know at the time of the incident. Thus, the Court GRANTS the motion in part and DENIES in part.

4.      *Motion in Limine 4: Exclude Portillo's criminal history.*

Plaintiff next asks the Court to exclude evidence of Portillo's conviction and pending sentence to suggest a motive as to why Portillo "might be willing to engage in a gun battle with" Defendant Dolan. Dkt. 73 at 6. Relying on Federal Rule of Evidence 404(b)(1), Plaintiff explains that evidence "of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *Id.* Plaintiff maintains that the prejudice of this information "completely outweighs any basis for a claim or argument by the defense" and is little more than "total speculation." *Id.*

Defendant Dolan responds that the request is overbroad and points to several facts that he believes are relevant and probative: 1) "that Portillo had a strong incentive to shoot at Dolan to

evade capture"; and 2) that Portillo could not possess firearms at the time, because he was scheduled to be sentenced to more than a year of prison. Dkt. 82 at 3. Defendant argues that the evidence is both relevant and probative under Rule 403 and admissible as "other act" evidence under Rule 404(b). Dkt. 82 at 3–4.

The Court first turns to Defendant's relevance claim. Evidence of a decedent's criminal history "may be relevant and admissible in an excessive force case, provided that the officers were aware of such information at the time of incident." *Castro v. Cnty. of Los Angeles*, No. 213CV06631CASSSX, 2015 WL 4694070, at *3 (C.D. Cal. Aug. 3, 2015) (citing cases). Defendant Dolan did not know of Portillo's criminal record. Dkt 73 at 7. Still, Defendant argues that the evidence is relevant and should be admitted. Dkt. 82 at 3–5.

Defendant points to *Boyd v. City and County of San Francisco*, 576 F.3d 938, 943 (9th Cir. 2009) to argue for admission. Dkt. 82 at 3–4. There, the decedent's family challenged the admission of evidence related to 1) a 1993 high-speed chase with police precipitating the loss of the decedent's legs; 2) the decedent's criminal history; 3) evidence that the decedent had drugs in his system at the time he was shot. *Id.* The family argued that the information was irrelevant because the defendant officer did not know of its existence before shooting the decedent, and the only issue in front of the jury was whether the officer's "actions were reasonable based on his perspective at the time." *Id.* at 943–44 (citation omitted). But, critically, the defendants had offered a suicide-by-cop theory. *Id.* at 944. And the above evidence spoke to the theory. *Id.* For example, the court noted that "the circumstances of the 1993 car crash, a traumatic and life-changing event in [decedent's] life that could be tied to police action, made it more probable that [decedent] resolved to place liability for his death on the police." Similarly, the Court found that the decedent's "criminal history, particularly the two kidnapping attempts that provoked the high-speed chase and the potential sentence that he faced if prosecuted for those actions, made it

more probable that [decedent] was trying to provoke a police shootout, rather than trying to surrender." *Id.* at 944–45. The Ninth Circuit noted, "[i]n a case such as this, where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible." *Id.* at 944.

Here, however, Defendant Dolan does not offer a suicide by cop theory. Dkt. 82 at 4 ("Although Defendant is not necessarily alleging a theory of 'suicide by cop,' the parties substantially disagree as to Portillo's motive and intentions during his encounter with Dolan."). Rather, Defendant seeks to admit this evidence simply to show Portillo's "motive and intentions during his encounter with Dolan" to make a "critical issue in this case – that Portillo was reaching for a gun – more likely to be true." *Id.* at 4–5.

And "in several cases since *Boyd*, the Ninth Circuit has reiterated that the jury's decision whether force was excessive cannot be based on information that was not known to the officers at the time." *Tofte v. City of Longview*, No. 3:22-CV-05700-TMC, 2024 WL 4451403, at *4 (W.D. Wash. Oct. 8, 2024). The reasoning in *Stringer v. City of Pablo* is instructive here. No. C 07-03544 MEJ, 2009 WL 5215396, at *3 (N.D. Cal. Dec. 28, 2009). There too, the defendant attempted to rely on *Boyd* to persuade the court to admit evidence of the decedent's criminal history. *Id.* The court declined, explaining

> Here, in contrast, Defendants are not defending on a suicide by cop theory, and the Decedent's motivation or intention to provoke the Officers to shoot him is not at issue. Rather, the key issue is Decedent's *actions* leading up to the shooting. While Defendants may argue that Decedent's criminal history, including the fact that the Decedent knew he would be facing his "third-strike" if arrested, makes it more probable that he was acting erratically and violently resisting arrest, Defendants have not persuasively articulated how Decedent's prior convictions lend support to the Officers' account of how Decedent acted when they tried to detain him. In contrast, in *Boyd,* the decedent's criminal history-and particularly, the decedent's two attempted kidnappings that occurred on the evening he was shot-evinced the decedent's intention of dying by police fire. Here, however, there is no claim that Decedent's intention was to die by struggling with the police. Further, accepting Defendants' reading of *Boyd* would mean that a

ORDER ON MOTIONS IN LIMINE - 8

defendant/suspect's criminal history would always be probative of the suspect's resistance to arrest when there is a dispute on that issue. The Court does not interpret *Boyd*'s ruling so broadly; rather, it reads it as limited to cases where a suicide by cop theory is being asserted or other similar circumstances where the suspect/defendant's intent is clearly at issue.

*Id.*

The same is true here. Defendant's theory regarding Portillo's intent is based on evidence that was not known to Defendant Dolan at the time. That tenuous theory cannot justify the admission of highly prejudicial evidence that was not known to Defendant Dolan when he decided to use deadly force. The Court finds that the minimal probative value of any evidence of Portillo's criminal history is outweighed by a high danger of unfair prejudice and confusion of the issues. Fed. R. Evid. 401, 403.

The Court turns next to Defendant's 404(b) argument. Rule 404(b) provides that "[e]vidence of any crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Defendant urges the Court to admit "the fact that Portillo was awaiting sentencing and was prohibited from possessing firearms" as "other act" evidence. Dkt. 82 at 5. "Other act" evidence is only admissible under Rule 404(b) if the proponent of the evidence satisfies the *Duran* test: (1) there must be sufficient proof for the jury to find that the defendant committed the other act; (2) the other act must not be too remote in time; (3) the other act must be introduced to prove a material issue in the case; and (4) the other act must, in some cases, be similar to the offense at issue. *Duran v. City of Maywood*, 221 F.3d 1127, 1132–33 (9th Cir. 2000).[2] Even if the *Duran* test is satisfied, the evidence may still be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* at 1133.

---

[2] The fourth factor applies only in criminal cases. Thus, it does not apply here. *See, e.g.*, *United States v. Bibo-Rodriguez*, 922 F.2d 1398, 1400 (9th Cir. 1991).

Defendant has sufficiently argued the elements of the *Duran* test. Dkt. 82 at 6–7. And Defendant has reasoned that "the probative value of the facts that Portillo had an upcoming sentencing and was prohibited from possessing firearms is not substantially outweighed by the danger of unfair prejudice to the Plaintiff." *Id.* The Court disagrees with Defendant's Rule 403 analysis. Defendant Dolan did not know of the imminent sentencing when he shot Portillo, greatly diminishing the significance of the information. *Bordegaray v. Cnty. of Santa Barbara*, No. 214CV8610CASJPRX, 2016 WL 7260920, at *4 (C.D. Cal. Dec. 13, 2016) (quoting *Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684, 690 (9th Cir. 2001)) ("Moreover, defendants do not assert that [the officer] knew of the . . . incident at the time of the shooting. Therefore, the . . . incident did not contribute to [the officer's] perception of the threat posed by plaintiff and is not necessary to prove a material issue in this case. The Court further finds that the probative value of the. . . incident is substantially outweighed by the risk of a mini trial on the . . . incident, which would be 'an inefficient allocation of time.'"); *Ellis v. Navarro*, No. C 07-5126 SBA PR, 2012 WL 3580284, at *4 (N.D. Cal. Aug. 17, 2012) ("In contrast, such evidence could potentially mislead and distract jurors by causing them to focus on matters other than the facts and circumstances confronting the Defendants at the time of the incident.').

This case differs from others where guilty pleas were admitted under the other acts exception. For example, in *Schroeder v. County of San Bernardino*, No. EDCV18427DMGJCX, 2019 WL 3037923, at *8 (C.D. Cal. May 7, 2019), the parties also "hotly dispute[d]" the events that took place just before the officers used force on the plaintiff. The officers maintained that the plaintiff was attempting to flee or resist arrest, and plaintiff argued otherwise. *Id.* After the court entered its order on a motion for summary judgment, but before the motions in limine, the

plaintiff pleaded guilty to "wet reckless"[3] for his actions in his attempt to evade arrest. *Id.* The court explained that the plea was thus relevant. *Id.* ("Given that Defendants intend to proffer firsthand testimony that they suspected Plaintiff was intoxicated, and expert testimony that their training would have given rise to those suspicions, Plaintiff's guilty plea to wet reckless qualifies as 'evidence that may support' Defendants' version of events because Plaintiff's intoxication would likely have affected a reasonable officer's assessment of whether Plaintiff posed a safety threat or flight risk.").

But this plea is different. While it is true that the plea prevented Portillo from owning a firearm, and that his sentencing was imminent, it is not true that this information is "very probative of Portillo's motive." Dkt. 82 at 7. And the danger of unfair prejudice or confusion from admitting such information far outweighs any probative value.

This motion in limine is GRANTED.

5.    *Motion in Limine 5: Exclude apologies or sympathy by Defendants and their witnesses for the death of Moses Portillo.*

Plaintiffs also request that Defendants, their counsel, and any witnesses be "prohibited from expressing any feelings or benevolent gestures of remorse, sympathy, or otherwise communicate an apology for the killing" of Portillo. Dkt. 73 at 8. Plaintiff argues that such expressions are "irrelevant and immaterial" and may "play on the jury's sympathy" or "mislead the jury." *Id.* Defendant responds that he and "his attorney should not be forced to act like we are indifferent, callous, and insensitive to Portillo's death." Dkt. 82 at 11.

This motion is too broad and vague for a pretrial ruling. Defendant will be allowed to express his emotions surrounding the shooting within reason and in accordance with the Rules of

---

[3] "'Wet reckless' describes a conviction for reckless driving after prosecutors allow a criminal defendant to plead guilty or nolo contendere to that offense as a substitute for a charge of driving under the influence." *Id.* at *6 n.5.

Evidence. This motion is DENIED without prejudice and the Court will consider objections to specific evidence or testimony as they arise at trial.

6.      *Motion in Limine 6: Limit number of experts Defendant may call on use of force and exclude cumulative testimony from police experts Chris Nielson and Steve Papenfuhs.*

Plaintiff next moves to exclude what she believes is cumulative testimony from Defendant's two police practices experts. Dkt. 73 at 8. Though Plaintiff does not dispute the testimony's relevance, she argues that the two experts would provide "needless presentation of cumulative evidence." *Id.* (quoting Fed. R. Evid. 403).

Defendant in turn argues that the two experts provide different opinions and that such testimony would not be cumulative. Dkt. 82 at 11. Defendant presents a chart of what they describe as different opinions. *Id.* at 12–15. Defendant elaborates, "For instance, Nielsen refers to policies of the Pierce County Sheriff's Office, while Papenfuhs does not. Papenfuhs gives one opinion that Dolan's training was up to date. . . . Nielsen gives no such opinion. . . . Nielsen gives an opinion as to Dolan's communication strategies. . . . Papenfuhs does not." *Id.* at 15 (internal citations omitted).

The Court finds that much of the testimony is similar. But the Court, without more information from Defendant about what exactly he plans to elicit from each witness (and how this testimony differs), cannot find at this time that the testimony would be needlessly cumulative. The motion is thus DENIED without prejudice. The Court will consider objections to cumulative testimony based on the testimony presented at trial.

7.      *Motion in Limine 7: Exclude discussion of reducing general damages to present value.*

Finally, Plaintiff asks the Court to prevent Defendants from "referencing, suggesting, arguing, eliciting testimony or offering evidence concerning any attempt to relate noneconomic

damages to investments, interest rates, or rate of return, or otherwise expressly or impliedly indicating that general damages should be reduced to present value." Dkt. 73 at 11. Defendant does not oppose the motion but rather requests that the Court defer ruling on this motion until after evidence has been presented and it "is clearer as to what sort of general damages Plaintiff will be requesting." Dkt. 82 at 16.

A ruling on this motion is premature. Plaintiff has moved to amend her complaint, adding Portillo's child and reasserting her state-law claims. Were the Court to allow Plaintiff to amend her complaint, the amendment would necessarily change the potential available damages. The Court will defer ruling on this motion until a decision on the motion to amend has been made. For this reason, the motion is DENIED without prejudice.

## C.    Defendants' Motions in Limine

*1.    Motion in Limine 1: Exclude argument, reference, or comment on Dolan's meetings, communication, and advice from attorneys.*

Defendants first ask the Court to exclude any "attempt to question the individual defendant Dolan about meetings with his lawyers before his statements to investigators and before their depositions and before this trial." Dkt. 74 at 2. Defendant argues, first, that raising the fact that Defendant Dolan spoke with counsel before giving a statement violates his Fifth Amendment right to counsel. *Id.* at 3. Defendant also argues that questions on that topic are "an intentional indirect reference to the privileged communications that Dolan had with his attorney[.]" *Id.* Defendant urges the Court to find that Plaintiff should "not be allowed to insinuate that, because Dolan communicated with his attorney before writing his statement, his statement is any less true." *Id.* (citing cases).

In response, Plaintiff explains that she seeks only to introduce the "timing of his statement, which is probative regarding Defendant Dolan's credibility regarding his recollection

of events." Dkt. 84 at 2. Plaintiff will not ask Defendant Dolan to "divulge privileged communications or legal advice," nor will she try "to argue a negative inference regarding" his invocation of attorney-client privilege. *Id.*

"The purpose of the attorney-client privilege is to protect every person's right to confide in counsel free from apprehension of disclosure of confidential communications." *United States v. Hardy*, No. 316CR00006MMDVPC, 2017 WL 11463113, at *1 (D. Nev. Sept. 1, 2017) (quoting *In re Grand Jury Subpoena (Osterhoudt)*, 722 F.2d 591, 593 (9th Cir. 1983)). "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (citation omitted). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* (citation omitted).

Plaintiff may not intrude upon the attorney-client privilege. Nor may Plaintiff make a negative inference regarding the invocation of an attorney or attorney-client privilege. Plaintiff will, however, be allowed to elicit testimony that Defendant Dolan's statement was not offered until 5 days after the incident. "[T]he jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States ex rel. Savage v. CH2M Hill Plateau Remediation Co.*, No. 4:14-CV-05002-SMJ, 2021 WL 802125, at *2 (E.D. Wash. Jan. 11, 2021) (quoting *United States v. Abel*, 469 U.S. 45, 52 (1984)). And the probative value of that evidence relevant to credibility is not substantially outweighed by the dangers enumerated in Rule 403.

Thus, the motion is GRANTED in part and DENIED in part.

2. *Motion in Limine 2: Exclude argument, testimony, or comment that the number of shots Defendant Dolan fired in itself constituted an unreasonable use of force.*

Defendants then request that the Court prohibit Plaintiff from providing evidence that the number of shots Defendant Dolan fired is alone unreasonable use of force. Dkt. 74 at 4. Quoting the Supreme Court's decision in *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014), Defendants explain "if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." *Id.* Thus, Defendants maintain, the law is settled, and Plaintiff should be barred from making any such argument. *Id.* Plaintiff responds that *Plumhoff* "does not discuss the admissibility of the number of shots to prove whether or not a particular deputy used excessive force." Dkt. 84 at 3.

Plaintiff is not wrong. *Plumhoff* considered a lower court's denial of the defendant officers' motions for summary judgment based on qualified immunity. 572 U.S. at 769. But Plaintiff errs in arguing that *Plumhoff* is irrelevant to an evidentiary motion. In *Plumhoff*, the Supreme Court considered the respondent's argument that, "even if the use of deadly force was permissible, petitioners acted unreasonably in firing a total of 15 shots." *Id.* at 777. The Court disagreed, explaining, "[i]t stands to reason that, if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." *Id.* In doing so, the Court squarely rejected the exact type of argument Plaintiff seeks to make here: that the number of shots shows excessive force. *See id.* Other courts have since followed suit. *See, e.g.*, *Dasho v. City of Fed. Way*, No. C12-1398JLR, 2015 WL 3796284, at *10 (W.D. Wash. June 17, 2015) ("[W]hen faced with a tense, uncertain, rapidly evolving, and dangerous situation such as the one that existed here, an officer may reasonably fire a volley of shots at a threatening suspect, even if some of those shots are fired as the suspect falls to or lies on the ground."); *A.R.L. v. City of Fullerton*, No. 821CV00929FWSJDE, 2023 WL

5659693, at *11 (C.D. Cal. July 31, 2023) ("To the extent Plaintiff argues the officers fired too many shots to incapacitate Decedent, the court notes this argument is foreclosed by Supreme Court and Ninth Circuit precedent."). Plaintiff could still argue that Deputy Dolan continued to shoot Portillo after he knew that any threat had been quelled, but she does not do so. *See Gonzales v. City of Antioch*, 697 F. App'x 900, 902 (9th Cir. 2017) ("Finally, the number of shots fired does not create a factual dispute to defeat summary judgment . . . Although the officers fired 50 to 52 shots at [the decedent], appellants do not present any evidence suggesting the officers continued to fire at [the decedent] after they knew he was incapacitated or no longer posed a threat.").

While the Court will not prevent Plaintiff from eliciting testimony about the number of times that Defendant Dolan shot Portillo, Plaintiff may not argue that the number of shots alone constituted excessive force. Plaintiff may still argue that "Defendant Dolan was not in control of his emotions" when he shot Portillo. Dkt. 84 at 3. But Plaintiff is precluded from making the type of argument foreclosed by *Plumhoff*. Thus, the motion is GRANTED.

    3.    *Motion in Limine 3: Exclude all argument, testimony, comment, and evidence that Defendant Dolan should have used a lesser degree of force.*

Defendants similarly ask that Plaintiff's experts not be allowed to testify "as to whether Deputy Dolan's use of force in the circumstances of this case was reasonable." Dkt. 74 at 4. Defendants also ask that the experts not "testify as to Deputy Dolan's subjective intent." *Id.* They concede that the experts may testify to available alternatives for Defendant Dolan's use of force. *Id.* The proposed limitation is merely that they cannot testify that Dolan "*should* have used those alternatives." *Id.* (emphasis in original).

Plaintiff responds that their experts "are absolutely allowed to rebut [the defense expert's] opinion and argue that [Defendant Dolan] should have used a lesser degree of force." Dkt. 84 at

3. Plaintiff argues that such testimony would examine the training that Defendant Dolan received and whether he followed that training appropriately during the traffic stop. *Id.* Plaintiff concludes that her experts should thus be allowed to testify about alternative uses of force and de-escalation tactics. *Id.*

One of the factors that courts consider in their use of force analysis is "the availability of alternative methods of capturing or subduing a suspect." *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005), disapproved of on different grounds by *Lemos v. Cnty. of Sonoma*, 40 F.4th 1002 (9th Cir. 2022) (citation omitted); *see also Vos v. City of Newport Beach*, 892 F.3d 1024, 1033–34 (9th Cir. 2018) (citations omitted) ("Other relevant factors include the availability of less intrusive force, [and] whether proper warnings were given."). A Plaintiff may argue "that the officers' conduct violated applicable police standards and that there were alternative techniques available for subduing [the decedent] that presented a lesser threat of death or serious injury." *Smith*, 394 F.3d at 703. "A rational jury could rely upon such evidence in assessing whether the officers' use of force was unreasonable." *Id.* (citations omitted); *see also Savage v. City of Twin Falls*, No. 1:13-CV-00179-EJL, 2015 WL 1635252, at *8 n.4 (D. Idaho Apr. 13, 2015) (explaining that "report outlining multiple other tactics [officers] could have used to affect the arrest buttresses [plaintiff's] claim of excessive force and presents another factor weighing in [plaintiff's favor under the *Graham* balancing test.").

Further, under the Ninth Circuit's pattern jury instruction for excessive force, the Court may instruct the jurors to consider how long the officer "had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period"; "the relationship between the need for the use of force and the amount of force used"; "any effort made by the officer[] to temper or to limit the amount of force"; "the availability of alternative methods" to take the plaintiff into custody or to subdue the plaintiff; and "whether it was

practical for the officer[] to give warning of the imminent use of force, and whether such warning was given." Ninth Circuit Pattern Jury Instruction 9.25.

Thus, the Court will admit evidence of the potential for a lesser use of force. *Speer v. Cnty. of San Bernardino*, No. EDCV 20-44 JGB (SPX), 2021 WL 5969521, at *6 (C.D. Cal. Aug. 9, 2021); *see also Engman v. City of Ontario*, No. EDCV 10-284 CAS PLAX, 2011 WL 2463178, at *9 (C.D. Cal. June 20, 2011) ("Plaintiffs' expert is entitled to opine as to whether the officers could have used a lesser degree of force.").

But Plaintiff is cautioned not to inquire into Defendant Dolan's "subjective intent." Dkt. 74 at 4. "[W]hen we evaluate whether the police conduct was lawful or unlawful, we must do so in light of the dangerousness of the particular situation that confronted the police . . . without regard to [the officers'] underlying intent or motivation," *Headwaters Forest Def. v. Cnty. of Humboldt*, 240 F.3d 1185, 1203–04 (9th Cir. 2000), *cert. granted*, judgment vacated on other grounds, 534 U.S. 801 (2001) (first citing *Washington v. Lambert*, 98 F.3d 1181, 1186 (9th Cir. 1996); and then citing *Graham*, 490 U.S. at 397).

Thus, the motion is GRANTED in part, as to testimony on Defendant Dolan's subjective intent, and DENIED in part, as to Defendant Dolan's alternative uses of force.

4.    *Motion in Limine 4: Exclude allegations that Dolan made tactical errors.*

Defendants next request that the Court prohibit Plaintiff from eliciting testimony that Defendant Dolan committed "tactical errors prior to his use of force that made his actions unconstitutional." Dkt. 74 at 5. They maintain that "pre-seizure 'mistakes' are irrelevant to" assessing a Fourth Amendment violation. *Id.* Plaintiff responds that "evidence regarding whether Dolan made errors or mistakes before he used deadly force is absolutely relevant to determine whether he was warranted to use deadly force." Dkt. 84 at 4.

Here too, the Ninth Circuit's pattern instruction on excessive force is instructive. The pattern instruction also includes an instruction that allows the jury to consider "the number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent[.]" Ninth Circuit Pattern Jury Instruction 9.25. Accordingly, errors that Defendant Dolan made, which may have created the dangerous situation, are relevant.

Thus, the motion is DENIED.

5.      *Motion in Limine 5: Exclude both direct and indirect argument, testimony, comment, and inferences that Dolan's traffic stop of Simonian and subsequent investigation of Portillo was pre-textual.*

Defendants argue that Plaintiff's counsel should be prevented from eliciting testimony or contending that Defendant Dolan's stop of Simonian's vehicle was a pretextual stop. Dkt. 74 at 6. Defendants explain that, not only is the nature of the stop disputed, but it is also irrelevant. *Id.* Thus, presenting such evidence would simply be "put forward to inflame the passions of the jury and confuse the issues." *Id.* (citing Fed. R. Evid. 403).

Plaintiff responds that "[t]he events leading up to the shooting and whether the stop was pretextual is relevant to determine whether Defendant Dolan acted reasonably when he used excessive force and whether he could have avoided using deadly force." Dkt. 84 at 4. The Court disagrees. Plaintiff did not bring an unlawful seizure claim. *See generally* Dkt.1. An argument on this issue would needlessly confuse the jury. *See* Fed. R. Evid. 403. And it would be of little probative value, especially given that Officer Dolan has repeatedly explained why he stopped the vehicle. See, e.g., Dkt. 32 at 21:58:54–55 (video of Defendant Dolan telling Simonian that he stopped her because her mirror was broken and she was changing lanes without signaling).

For these reasons, the motion is GRANTED.

6.    *Motion in Limine 6: Exclude Pierce County Sergeant Zach Bregel's testimony.*

Defendants next ask that the Court exclude Sergeant Bregel's testimony as irrelevant. Dkt. 74 at 7. They maintain that Bregel has no personal knowledge of the incident, having not been present for the shooting or investigation. *Id.* They also explain that he is not Dolan's training deputy. *Id.* And they note that he is not a designated representative for the county. *Id.*

Plaintiff's response explains that she intends to elicit testimony that "Pierce County deputies essentially are not trained in de-escalation tactics, and that Pierce County Sheriff's Office did not have a de-escalation policy." Dkt. 84 at 5. But Pierce County is no longer a Defendant here. Dkt. 67 at 20–25. While such testimony is relevant to municipal liability for failure to train, that claim has been dismissed. *See id.* Accordingly, the motion is GRANTED as to the testimony Plaintiff has pointed to in response. But if there is relevant testimony that Plaintiff hopes to introduce from Sergeant Bregel, she may still do so, subject to any objections at the time of trial.

7.    *Motion in Limine 7: Exclude all argument, testimony, or comment concerning the fact that the County is indemnifying Dolan in this case, the County's ability to pay damages, and the County's insurance coverage.*

Defendants explain that, though Pierce County has been dismissed from the case, it is indemnifying Dolan because his actions occurred during and within the scope of his employment. Dkt. 74 at 7. Defendants argue that the potential prejudice and confusion prompted by discussion of this fact would substantially outweigh any "de minimis probative value[.]" *Id.* at 7–8 (citing Fed. R. Evid. 403). They also claim that such argument is irrelevant. *Id.* at 7. And, they claim that, under Federal Rule of Evidence 411, evidence of the County's insurance should likewise be prohibited. *Id.* at 8.

Plaintiff responds that she has already agreed not to introduce evidence about the County's insurance coverage for Dolan. Dkt. 84 at 5. Plaintiff has also agreed not to "present

1    argument that the County has 'deep pockets[.]'" *Id.* But Plaintiff maintains that she should "be

2    allowed to discuss how Defendant Dolan was in the course and scope of his employment with

3    Pierce County, and that the County will pay any judgment on his behalf." *Id.*

4    Generally, "[i]nforming the jury of indemnification . . . would provide a windfall to

5    plaintiffs at taxpayers' expense." *Bell v. Clackamas Cnty.*, 341 F.3d 858, 868 (9th Cir. 2003)

6    (citing *Larez v. Holcomb*, 16 F.3d 1513, 1521 (9th Cir. 1994)). That rule does not apply,

7    however, when defendants put on evidence of their financial condition in hopes of reducing

8    punitive damages. *Id.* This then opens the door to evidence about "any indemnification . . . for

9    the payment of such damages." *Id.* (citing *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir.

10   1998)); *see also Howard v. Groover*, 706 F. Supp. 3d 1090, 1112 (D. Nev. 2023)

11   ("Indemnification for the payment of punitive damages may be taken into account in the event

12   that the individual defendant claims inability to pay.") (cleaned up).

13   Accordingly, the Court GRANTS the motion, but cautions Defendant that, if he raises the

14   issue of inability to pay, the Court will allow in evidence of indemnification.

15       8.    *Motion in Limine 8: Exclude testimony from Plaintiff Leona Qualey.*

16   Defendants next move to exclude testimony from Plaintiff Leona Qualey, Portillo's

17   adoptive mother, "as to any pecuniary matters pertaining to the family and her relationship with

18   the decedent." Dkt. 74 at 8. They maintain, first, that Plaintiff has "no relevant testimony or

19   evidence pertaining to Plaintiffs sole remaining Fourth Amendment Claim" and second, that

20   "any slight probative value that Qualey's testimony would have to the § 1983 claim would be

21   substantially outweighed by the danger of the jury determining this case not on the facts, but

22   instead upon their emotions." *Id.* (cleaned up).

23   A ruling on this motion is premature. Plaintiff has moved to amend her complaint, adding

24   Portillo's child and reasserting her state-law claims. The Court will defer ruling on this motion

until a decision on the motion to amend has been made. For this reason, the motion is DENIED
without prejudice.

9.   *Motion in Limine 9: Exclude any evidence pertaining to Pierce County Sheriff's
     Office policies and/or general orders.*

Defendants also move to exclude evidence related to Pierce County Sheriff's Office
policies or orders. Dkt. 74 at 8. Because the Court dismissed Plaintiff's claims against Pierce
County Sheriff Troyer and the Office in its summary judgment order, Defendants maintain that
"any evidence of possible violation of Department policy is irrelevant and inadmissible." *Id.* at 9.

The Ninth Circuit has considered whether training should be included in the qualified
immunity analysis for an officer. In *Perez v. City of Fresno*, Plaintiffs argued "well-known
police guidance" informed officers to remove individuals from their stomachs once they were
handcuffed and because the officers did not follow this guidance, qualified immunity was
inappropriate. 98 F.4th 919, 928 (9th Cir. 2024). The Ninth Circuit clarified that "official training
and guidance can influence the qualified-immunity analysis, but they are not determinative" *Id.*
(citing *Vazquez v. County of Kern*, 949 F.3d 1153, 1164–65 (9th Cir. 2020)). "Even if an officer
acts contrary to [his] training . . ., that does not itself negate qualified immunity where it would
otherwise be warranted." *Id.* (quoting *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600,
616, 135 S.Ct. 1765, 191 L.Ed.2d 856 (2015)).

That this is also relevant to the jury's analysis of Plaintiff's Fourth Amendment claim is
evident in the Ninth Circuit's pattern jury instructions. The jury may consider the availability of
alternative methods and any efforts made to deescalate the situation and decrease the amount of
force used. Ninth Circuit Pattern Jury Instruction 9.25. To the extent that Defendant Dolan
was—or was not—following Pierce County training or policies, these policies are relevant in
assessing the reasonableness of his actions.

Accordingly, the motion is DENIED. Still, the Court will consider objections case-by-case depending on the evidence presented and the testimony provided.

10.     *Motion in Limine 10: Exclude autopsy photographs.*

Defendants next request that the Court prohibit Plaintiff from introducing any photos from Portillo's autopsy. Dkt. 74 at 9. Because Defendant Dolan does not dispute that he shot Portillo, Defendants maintain that the "only relevance" of the photos "would be to generate sympathy and stoke the jury's emotions." *Id.* Plaintiff responds that the photographs are "relevant to show how Defendant Dolan's excessive force resulted in the brutal killing of Mr. Portillo." Dkt. 84 at 7.

The Court cannot decide this motion without first viewing the photos. The motion is thus DEFERRED to the Pretrial Conference; plaintiffs should be prepared to identify any photos they seek to admit at that time and present them to the Court. *See Briscoe v. City of Seattle*, No. C18-262 TSZ, 2020 WL 5938769, at *2 (W.D. Wash. Sept. 17, 2020) (similar).

11.     *Motion in Limine 11: Exclude evidence, testimony, and comment as to "high-risk vehicle stops."*

Defendant believes that Plaintiff will claim that the standards for a "high-risk vehicle stop" apply, and that, subsequently, Defendant Dolan did not follow "proper protocol." Dkt. 74 at 9. But Defendants maintain that the stop of Simonian's vehicle was not a "high-risk vehicle stop" and such information would thus be irrelevant and confusing. *Id.* at 10–11. Plaintiff responds that her police practices expert will testify that "although the traffic stop did not start as a high-risk vehicle stop, it certainly turned into one once Defendant Dolan saw the gun on Mr. Portillo's lap." Dkt. 84 at 7.

The Court cannot rule on this question without greater detail as to Mr. Hicks's proposed testimony, whether it was adequately disclosed, and whether this motion is essentially an

untimely *Daubert* challenge. The Court will hear argument on this motion at the pretrial conference and DEFERS ruling on this motion.

> 12.    *Motion in Limine 12: Exclude any testimony or evidence not specifically related to Plaintiff's remaining claims which are proceeding to trial.*

As Defendants explain, on January 27, 2025, this Court dismissed Plaintiff's *Monell* claims against Pierce County and Sheriff Troyer, as well as Plaintiff's common law tort claims. Dkt. 74 at 10. Thus, Defendants maintain that Plaintiff should not be allowed to present any evidence related to those dismissed claims. *Id.*

A ruling on this motion is premature. Plaintiff has moved to amend her complaint, adding Portillo's child and reasserting her state-law claims. The Court will defer ruling on this motion until a decision on the motion to amend has been made. For this reason, the motion is DENIED without prejudice.

> 13.    *Motion in Limine 13: Bifurcate the trial.*

Defendants next request that the Court bifurcate the trial. Defendants explain that they intend to re-raise qualified immunity as a defense at trial. Dkt. 74 at 11. They believe that this "necessitates trial bifurcation between" Plaintiff's Fourth Amendment claim and her damages claim. *Id.* at 11.

Plaintiff responds that Defendant has provided no evidence or argument about why the case should be bifurcated. Dkt 84 at 8. She claims that it would waste judicial resources. *Id.* And notes that her damages case will not take much courtroom time—"only three to five witnesses." *Id.*

Federal Rule of Civil Procedure 42(b) gives district courts broad discretion to bifurcate a trial. *Zivkovic v. S. California Edison*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("Rule 42(b) of the Federal Rules of Civil Procedure confers broad discretion upon the district court to bifurcate a

trial[.]"); *Diaz*, 840 F.3d at 601 (9th Cir. 2016) ("[The Ninth Circuit] usually affirm[s] a trial judge's decision—to either bifurcate or keep things together—as within her discretion"). A court might bifurcate a trial to "avoid[ ] a difficult question by first dealing with an easier, dispositive issue," or to avoid the risk of prejudice. *Diaz*, 840 F.3d at 601.

Defendant relies mainly on *Diaz*. Dkt. 74 at 11. There, the Ninth Circuit reversed a trial judge's decision not to bifurcate. The Ninth Circuit explained that "under the guise of impeaching [plaintiff's] testimony that she loved her son, Defendants introduced (over repeated objection) photographs of Diaz posing with firearms and making gang signs." *Id.* The court also allowed the defense's witnesses to "expound[] on the activities and customs of violent gangs and described Diaz's moniker of "Stomper," his criminal history, and his tattoos in great detail" and to speculate "as to how the enormously high level of methamphetamine in Diaz's system at the time of the shooting may have affected his response to the police." *Id.* The Court explained that "it is hard to see how most of this testimony was relevant even to damages, absent testimony—of which there was none—that [plaintiff] knew of the photographs, gang signs, and drug use on the day of the offense, and that that knowledge undermined the emotional impact of her son's death." *Id.* The Court further noted "there was also highly prejudicial testimony that was under any circumstances not relevant to liability or damages." Thus, the Court concluded, "[c]onsidering that the parties and district court had repeated trouble tracking precisely why this prejudicial evidence was admissible for any purpose, no jury could properly compartmentalize it." *Id.* at 602.

Defendant has not offered any such evidence that could induce or inflame prejudices here. See Dkt. 74 at 11–12. Rather, Defendant only requests bifurcation so that he may reraise qualified immunity at trial. This is insufficient to meet even the basic requirements of Rule 42(b). The Court also notes that Defendant's motion does not address the Ninth Circuit's

requirements for how qualified immunity may be presented as a trial defense. Thus, the motion is DENIED.

14.    *Motion in Limine 14: Exclude any witness' personal experience as to when they previously used profanity.*

Defendant also asks that the Court prevent any witness from testifying about past use of profanity, claiming that it is both irrelevant, Fed. R. Evid. 402, and inadmissible propensity evidence, Fed. R. Evid. 404(b). Dkt. 74 at 12. This motion in limine is too broad and vague for a pretrial ruling. Thus, the motion is DENIED without prejudice. Objections will be considered as needed at trial.

Defendant also asks here that the Court "allow all parties to fully examine any witnesses called by any other party." *Id.* Defendant explains that the parties plan to call many of the same witnesses, and, to avoid "the cost, confusion and extension of the time for this trial the Court should allow the parties to fully examine any witness, even if called by another party." *Id.* Plaintiff responds that she "should not be forced to allow Defendants to fully examine any witnesses called by a party." Dkt. 84 at 8. Though Defendant can cross-examine the witnesses, Plaintiff requests to "put [o]n their case in the way they so choose." *Id.*

Under Federal Rule of Civil Procedure 611(a), provides that a court may exercise "reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; [and] (2) avoid wasting time[.]" The Court will discuss this issue with the parties at the pretrial conference and for now DEFERS ruling on this motion.

15.    *Motion in Limine 15: Continuing objection.*

Lastly, Defendants request that the Court grant them a continuing objection and require counsel for both parties to instruct their witnesses to comply with the motions in limine granted

here. Dkt. 74 at 12. Plaintiff does not oppose this motion, but simply asks that the Court grant the motion for both parties. Dkt. 84 at 9. The Court agrees and GRANTS the motion.

**D.    Stipulated Motions in Limine**

1.    *Motion in Limine 1: Exclude evidence or argument concerning other prior lawsuits, prior cases, prior internal investigations, or prior conduct involving Defendant Dolan, Pierce County Sheriff's Office and Sheriff Edward Troyer, to include prior settlements and jury verdicts.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

2.    *Motion in Limine 2: Exclude argument that litigation induced stress can form an additional basis for damages.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

3.    *Motion in Limine 3: Exclude lay witness opinions on whether Dolan used improper tactics and excessive force.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

4.    *Motion in Limine 4: Exclude opinions and evidence not disclosed in discovery.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

5.    *Motion in Limine 5: Exclude Moses Portillo's post-mortem blood alcohol and drug tests.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

6.    *Motion in Limine 6: Exclude any argument, testimony, or comment that Dolan should be fired, de-certified, and prosecuted.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

7.    *Motion in Limine 7: Exclude Dolan's failed "Field Interview Scene," which occurred during training in 2019.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

8.    *Motion in Limine 8: Exclude the relative legal resources of the parties.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

9.    *Motion in Limine 9: Exclude Plaintiff's financial status and the financial status regarding any of Portillo's heirs/beneficiaries.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

10.    *Motion in Limine 10: Exclude mention of Portillo's child and any other aspect of his family status, including any paternity actions.*

Because of the pending motion to amend the complaint to add Portillo's child as a plaintiff, Dkt. 88, this motion is DENIED. The parties may reraise these concerns at a pretrial conference or in supplemental motions at a later date.

11.    *Motion in Limine 11: Exclude phrasing such as "We are not in it for the money."*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

12.    *Motion in Limine 12: Exclude unrelated incidents of alleged police misconduct.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

13.    *Motion in Limine 13: Exclude missing witness instruction or related testimony unless either party determines that the elements for a missing witness instruction have been met.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

14.    *Motion in Limine 14: Prevent witnesses from giving opinions on the credibility of other witnesses.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

15.    *Motion in Limine 15: Exclude any "Golden Rule" argument.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

16.    *Motion in Limine 16: Exclude prior settlement offers and/or negotiations.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

17.    *Motion in Limine 17: Exclude any reference to punishing the County or law enforcement in general—pending the Court's ruling on the availability of punitive damages.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

18.   *Motion in Limine 18: Require parties to provide at least 24-hours' notice to the opposing party before a witness testifies.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

19.   *Motion in Limine 19: Require parties obtain leave of court before publishing exhibits.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

20.   *Motion in Limine 20: Exclude any evidence that Portillo was in foster care, had high school fights, prior sexual abuse, and any claims against the State to include related settlements.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

21.   *Motion in Limine 21: Exclude Portillo's prior criminal history, with the exception of his convictions from Pierce County Superior Court Case 20-1-02937-0.*

The parties stipulate to this proposed exclusion. As explained above, Portillo's conviction under the mentioned Pierce County Superior Court case is also excluded. Accordingly, this motion is GRANTED as to all other convictions.

22.   *Motion in Limine 22: Exclude Portillo's previous drug usage and drug history.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

23.   *Motion in Limine 23: Exclude references to officers being "traumatized" or otherwise adversely impacted by the shooting or death of Portillo.*

The parties stipulate to this proposed exclusion. The parties caveat the exclusion by explaining that the "parties agree that this can be raised on a case-by-case basis and that Defendants will only seek to introduce this type of evidence if the door is opened—to include, but not limited to, insinuating that Dolan shows a lack of remorse." Dkt. 75 at 5 n.1. Accordingly, this motion is GRANTED. The Court will consider case-by-case objections as necessary.

24.    *Motion in Limine 24: Exclude testimony from any witnesses beside Deputy Dolan regarding Portillo's "aggression."*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

25.    *Motion in Limine 25: Exclude use of terms like "guilty/not guilt," "beyond a reasonable doubt," or other terms to make the jury think the standard is anything besides preponderance of the evidence.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

26.    *Motion in Limine 26: Exclude any argument that "money will not compensate the plaintiff."*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

27.    *Motion in Limine 27: Exclude any references to contingency fees.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

28.    *Motion in Limine 28: Exclude any reference to "deep pockets" or lack thereof, or of Plaintiff "hitting the jackpot."*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

29.    *Motion in Limine 29: Exclude suggestion that a verdict will positively or negatively impact Defendant Dolan's reputation.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

30.    *Motion in Limine 30: Exclude evidence of Defendant Dolan's alleged good character.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

31.    *Motion in Limine 31: Exclude any discussion of the impact of taxes by any verdict against Defendant.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

32.    *Motion in Limine 32: Prevent counsel from vouching for credibility or veracity of a witness.*

The parties stipulate to this proposed exclusion. Accordingly, this motion is GRANTED.

1

### III.    CONCLUSION

2    It is so ORDERED.

3    Dated this 28th day of March, 2025.

4

5

6    Tiffany M. Cartwright
     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24